PADGETT v. MCALHANY.

1. INJUNCTION.—An order of injunction, issued for the purpose of requiring an officer to retain sufficient funds to pay a certain account, should only cover the amount in question, and not other funds in hand.

2. THE ACT CREATING THE COUNTY OF DORCHESTER provides that judgment rolls should be copied and paid for by the county as well as deeds, &c., recorded in books. MR. JUSTICE JONES *dissents*.

3. UNDER THE ACT CREATING DORCHESTER COUNTY, the clerk of Colleton County could only charge for copying judgment rolls, and certifying same, but could not charge one-half of taxed costs as for entering up judgments *de novo*.

4. MANDAMUS may issue to require the special commissioners of Dorchester County to audit and pay a claim which the act creating the board required it to pay, and fixed the price therefor. MR. JUSTICE JONES *dissents.*

Before WATTS, J., Dorchester, January, 1898. Modified.

Action by H. D. Padgett against T. O. McAlhany, L. A. Klauber, R. L. Farrell, D. E. Thrower, E. B. Fishburne, Geddings Ilderton, and Roach Platt, special commissioners for Dorchester County, for mandamus, requiring them to pay his account for transcribing records. From judgment for plaintiff, defendants appeal.

*Mr. W. M. Fitch,* for appellants, cites: *Mandamus cannot lie:* Rev. Stat., 691; 15 S. C., 323; 30 S. C., 523; 32 Am. Rep., 612; 4 Wall., 475; 25 Am. Rep., 337; 26 S. E. R., 281; 128 U. S., 40; 22 S. C., 383; 31 S. C., 84; 17 S. C., 566; 25 S. C., 103; 51 S. C., 388; 23 S. C., 177; 26 S. E. R., 281; 22 S. C., 583; 27 S. C., 9; 28 S. C., 259; 16 S. C., 236. *Act does not require judgment roll copied, for roll is not the lien:* Code, 309; 21 Stat., 718; U. S. Stat., vol. 1, 602. *Account not properly itemized:* Rev. Stat., 691; 27 S. C., 9. *Mandamus cannot issue unless petitioner show that officer is in funds for that account:* 8 S. C., 128; 13 S. C., 265; 7 S. C., 79, 86; 30 S. C., 587; 51 S. C., 388.

*Messrs. Henderson Bros.,* also for appellants, cite: *Mandamus should not issue:* 18 S. C., 250; 1 S. C., 23; 15 S. C., 323; 16 S. C., 38, 236; 30 S. C., 519; 32 S. C., 100; 51 S. C., 388.

*Mr. J. G. Padgett,* contra, cites: *Mandamus may issue in this case:* 16 S. C., 244. *Petitioner not required to make out itemized account:* 16 S. C., 252; 13 S. C., 264.

*Messrs. Howell & Gruber,* also contra, cite: *Exceptions too general:* 30 S. C., 167. *Compensation fixed by Statute, no discretion as to claim:* 13 S. C., 266; 16 S. C., 251. *Certificate signed by respondent as "Clerk of the Court," is sufficient:* Con. 1895, sec. 27, art. V.

Sept. 7, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. By an act of the General Assembly of the State of South Carolina, entitled "An act to establish Dorchester County," approved 25th day of February, 1897 (see 22 Stat. at Large, 595), and by section 2 thereof, the appellants were named as commissioners, and charged with the duties of having the boundaries of said Dorchester County surveyed and properly marked, as well as to designate and establish the particular site for the public buildings of said county, and for these latter purposes to receive gifts and grants for the benefit of said county, so far as a site for the county seat may require, and, also, with the power to enter into proper contracts therefor, and to enforce said contracts according to their terms and conditions; with the power to said commissioners to take conveyances to themselves of lands or personal property by way of a bonus to said cóunty, and authority, also, to convey by deeds or conveyance to third parties in their own names as commissioners any of the property received by them as aforesaid for the use of Dorchester County. The said commissioners were, by the 8th section of said act, declared to be "the proper corporate authorities of Dorchester County, and of each of the townships thereof and therein, for the purposes of this act," and said commissioners had the power to organize and elect their own proper officers. They were required to keep minutes of their meetings and proceedings and decisions, and have a seal. It required that four members of the board of seven members should constitute a quorum for the transaction of business, and the act required a concurrence of four members of said board to pass any measure in order to be binding. The said commissioners were authorized to issue and sell at not less than par, $20,000 of bonds of Dorchester County, and use said proceeds of said bonds for the purposes of said county. The 6th section of said act provided for the transfer to Dorchester County of all cases, civil and criminal, when the defendant therein resided in the territorial limits of said Dorchester County, and that all records

appertaining thereto, or commissions and other papers belonging to such cases, civil and criminal, should be transferred to Dorchester County. The 16th section of said act required the clerk of Circuit Court for Colleton and Berkeley Counties, respectively, within three months after a county seat for Dorchester County should be selected, to make, or cause to be made, "copies of all conveyances, mortgages and liens of every kind and description now on record in their respective offices, affecting or pertaining to all that territory embraced in the county of Dorchester as aforesaid: *Provided*, That the clerks of court, as hereinbefore stated, shall each receive for making and certifying such copies, one-half of the compensation, and no more, that they be entitled to under the present law for recording deeds, conveyances, mortgages, liens and other papers of a similar character. That such copies shall be made in substantial books to be procured for said purpose, and shall be filed with the commissioners provided for in section 2 of this act, or their successors in office, within three months after the vote is declared locating the county seat. That the cost of books and stationery, as well as making the copies herein required, and all other expenses incident to the same, shall be paid for by the commissioners provided for in section 2 of this act."

The commissioners named in said act organized thereunder. After St. Georges was declared the county seat of Dorchester County, H. D. Padgett, the elder, as clerk of the Circuit Court for Colleton County, caused copies of conveyances, mortgages and liens of every character to be made and presented to said commissioners, with a bill of $7,394.68 as his charge therefor. The said commissioners declined to pay said account. Hence, on the 3d day of January, 1898, H. D. Padgett, the elder, by his petition, applied to his Honor, R. C. Watts, at that time presiding over the Court of Common Pleas of the Second Judicial Circuit, to which circuit the said Dorchester County had been assigned, praying that the writ of mandamus should issue to said commissioners, requiring them to pay his said account.

Under the order of Judge Watts the commissioners made their return, setting out therein their grounds for refusing to pay said account, and praying that the prayer of the petition should be denied. To this return the said H. D. Padgett, the elder, filed an affidavit in reply. The matters came on to be heard before his Honor, Judge Watts, on the 21st day of January, and on the next day he issued the writ of mandamus prayed for. At the same time he issued an order enjoining the said commissioners from paying out any part of the funds in their hands until they had obeyed said writ. From both these orders the said commissioners appeal, and ask this Court to reverse the same.

It was unquestionably an error for Judge Watts to issue such a sweeping order of injunction as that granted by him. It was quite enough for him to have impounded in the commissioners' hands, till they obeyed his writ of mandamus, the sum of $7,394,68, which amount was all that the petitioner claimed to be due him by the said commissioners—for there were other duties imposed by law upon said board besides providing payment for the petitioner's services under said act. To this extent certainly the order of injunction must be modified.

The serious contention is over the account for $7,394.68, which the petitioner seeks to have respondents to pay, and in order that this may appear in its true light, the account itself should be reproduced. It is as follows:

*Dorchester County in Account with H. D. Padgett, for Transcribing Sundry . Records, to wit:*

| | | |
|---|---:|---:|
| Mortgage real estate book................................................... 6. | | |
| (No. 1,485.) | | |
| 43 lines per page, 10 words per line............................. | 430 | |
| 600 pages per book x 430 words................................. | 258,000 | |
| 6 books x 258,000 words ...... .................................... | 1,548,000 | |
| 1,548,000 at 5c. per 100 words................................................... | | $774 00 |
| 419 satisfactions at 12½ ...................................................... | | 52 37 |
| 1,485 mortgages, No. words to 'indexes, 30........................44,550 | | |
| 44,550 words at 5c. per 100 words............................................. | | 22 27 |
| 1,485 certificates at 12½.............................. ............................. | | 185 63 |
| | | $1,034 26 |

Mortgages personal property book—No. 6.
No. mortgages P. P., 1,537.
43 lines per page, 10 words per line.......................... 430 words.
3,115 pages in six books.
3,115 pages x 430 words to page ............................... 1,339,450
    To indexing 1,537 mortgages P. P.:
On direct and cross, 30 words................................... 46,110
                                                    1,385,560
    1,537 M. P. P. x 30 words.
1,385,560 at 5c. per 100 words.................... ......................    $692 78
1,537 certificates at 12½.......................................................    192 12
                                                      $884 90

    Bill of sale books—No. 1,100:
43 lines per page, 10 words to line........................... 430 words.

600 pages in book x 430 words to line.................. 258,000   "
Indexing 1,100 bills of sale, 30 words each............ 33,000   "
                                              291,000
291,000 words at 5c. per 100 words.............................................   $145 50
1,100 certificates at 12½.......................................................   137 50
                                                   $283 00

Chattel mortgages books, Nos. 1 and 2:
    No. 1,512 mortgages:
To indexing 1,512 mortgages, less $100, at 7½.............................   $113 40
1,512 certificates, each at 12½....................................................   189 00
                                                   $302 40

    Liens on crops, No. 565:
To filing 565 liens at 7½...........................................................   $42 57
To 565 certificates at 12½ .......................................................   70 62
                                                   $112 99

    Deeds, No. 3,974:
43 lines per page, 10 words to line......... 430
   5,747 pages in 10 books:
5,747 pages x 430................................. ..................... 2,471,210
To indexing 5,747 deeds, 30 words ............................ 119,220
                                                   2,590,430
2,590,430 words at 5c. per 100 words........................... $1,295 21
3,794 certificates at 12½.........................................   496 75
                                                   $1,791 96

Judgments:
    Judgments by default, No. 443:
Average No. of words per judgment............................. 2,625
2,625 words x 443 judgments....................................... 1,162,875
At 5c. per 100 words .............................................................   $581 43

| | | |
|---|---:|---:|
| To copying, filing, and sealing 443 summons at 25c .................... | 110 | 75 |
| To copying and filing and sealing 443 complaints at 25c............. | 110 | 75 |
| To copying, entering, and enrolling 443 judgments at 37½............ | 166 | 12 |
| To recording 443 judgments at 75c........................................ | 332 | 25 |
| To certificates 443 judgments at 25c....................................... | 110 | 75 |
| To copying orders final judgments, 443 at 12½ ......'.................... | 55 | 37 |
| | $1,467 | 42 |

Sealed note judgments, No. 128:
Average words per judgments, 400.

| | | |
|---|---:|---:|
| 400 words x 128 judgments, 51,200, at 5c. per 100 words............. | $25 | 60 |
| To copying filing complaints, 128 at 25c.................................. | 32 | 00 |
| To copying, entering, and enrolling judgments at 37½............... | 48 | 00 |
| To recording judgments, 128 at 75c.. ..................................... | 96 | 00 |
| To making certificates, 128 at 25c.......................................... | 32 | 00 |
| | $233 | 60 |

Transcripts of judgments, No. 128:
Average words per judgments, 200.

| | | |
|---|---:|---:|
| 200 words x 128 judgments, 25,600, at 5c. per 100 words............. | $12 | 60 |
| To copying filing transcripts of judgments, 128 at 12½. ...... ......... | 16 | 00 |
| To entering and enrolling transcripts, 128 at 37½....................... | 48 | 00 |
| To making certificates, 128 at 25c............., ............................ | 32 | 00 |
| | $108 | 80 |

Judgments, foreclosure and partition, No. 194:
Average words per judgments, 5,500.

| | | |
|---|---:|---:|
| 5,500 words x 194 judgments, 1,067,000 at 5c. per 100 words......... | $533 | 50 |
| To copying, filing, and sealing 194 summons at 25c..................... | 48 | 50 |
| To copying, filing, and sealing 194 complaints at 25c................. | 48 | 50 |
| To copying, filing, and sealing 194 answers at 12½c..................... | 24 | 35 |
| To entering and enrolling 194 judgments at 37½.......................... | 72 | 75 |
| To recording judgments for foreclosure, partition, and orders and reports, averaging 1,300 words per judgment, at 5c. per 100 words ..................................................................... | | 65 |
| To recording judgments and orders, 194 at 65 ........................... | 126 | 10 |
| To certificates, 194 at 25c.................................................... | 48 | 50 |
| | $902 | 10 |

Grand total:

| | | |
|---|---:|---:|
| Judgments by default, &c................................................... | $1,467 | 42 |
| Judgments, sealed notes, &c.................................................. | 233 | 60 |
| Judgments transcript............................................................ | 108 | 80 |
| Judgments, foreclosure, &c................................................... | 902 | 10 |
| Total amount for copying 895 judgments........................... | $2,711 | 92 |
| 13 names registered at 12½.................................................... | $1 | 62 |
| 13 certificates at 12½ ........................................................ | 1 | 62 |
| | $3 | 24 |

| | | |
|---|---:|---:|
| Filing 16 notaries at 12½............................................. | $2 00 | |
| Certificates, 16 at 12½................................................ | 2 00 | |
| | | $4 00 |
| Recording 8 statutory liens at 50................................ | | · 4 00 |
| Recording 8 charters at 50... ...................................... | | 4 00 |
| Recording 12 homesteads at 50 ................................. | | 6 00 |
| Recording 288 plats at 75....................................... | | $216 00 |
| 288 certificates at 12½.......................... ................. | | 36 00 |
| | | $252 00 |

Grand total:

| | |
|---|---:|
| Mortgages of real estate............................................. | $1,034 26 |
| Mortgages of personal property.................................... | · 884 90 |
| Bills of sale ......................................................... | 283 00 |
| Chattel mortgages less $100........... ......................... | 302 40 |
| Liens on crops....................................................... | 112 99 |
| Physicians ............................................................ | 3 25 |
| Notary public ........................................................ | 4 00 |
| Statutory liens........................................................ | 4 00 |
| Charter.................................... ........................... | 4 00 |
| Homesteads........................................................... | 6 00 |
| Deeds ............................................... ................. | 1,791 96 |
| Plats .................................................................. | 252 00 |
| | $4,682 76 |
| Judgments............................................................ | 2,711 92 |
| | $7,394 68 |

We have reproduced this account of the petitioner in its entirety in order that our observations touching the same may be more readily apprehended. There can be no question that the intention in passing this act, so far as the work required of the petitioner is concerned, was that the records of the new county of Dorchester should show the deeds, mortgages, chattel and real, and all judgments affecting persons and property in such new county, which existed in the county of Colleton, while such persons and property were embraced in Colleton County. While the terms of the act seemed to indicate that such deeds, mortgages and judgments should be recorded in books by the petitioner, as clerk of the Circuit Court for Colleton County, yet an examination of this act to form Dorchester County will show that such work so confided to the peti-

tioner would also include certified judgment rolls which are not recorded in books. Nothing is more common in actions to try title to land than to rely upon sales made under judgments, and in such cases it is necessary to produce the entire judgment roll. We do not think that the objection of the respondents to receiving and paying for the judgment rolls, simply because the same are not recorded in books, can be maintained.

But an inspection of the account of the petitioner shows that he has there entered the tax costs provided for clerks of court in entering up judgments in the first instance, for he has charged on said account the tax cost in relation to each summons and each complaint in each judgment, as though the parties litigant—plaintiff or defendant—were having their judgments entered up by the clerk of the Circuit Court immediately after the same were obtained. The act of the General Assembly did not by its terms justify any such conclusion by the clerk, for all he was required to do was to make copies of these records, and certify to the same. The account by the petitioner should be purged of all such charges, and he should only be allowed to charge for a copy of each judgment roll and his certificate thereto. As an illustration of our meaning as to the account as presented by the petitioner, under the head of judgments, he enters judgments by default to 443, and enters, "To copying, filing and sealing 443 summons, at 25 cents (each), $110.75." "To copying, filing and sealing 443 complaints, at 25 cents (each), $110.76." "To copying, entering and enrolling 443 judgments, at 37½ cents each, $166.12." "To recording 443 judgments, at 75 cents (each), $332.25." "To certificates 443 judgments, at 25 cents (each), $110.75." "To copying orders final judgments 443, at 12½ cents each, $55.37." As we before remarked, this is all wrong, for all that the act required of the petitioner was to make a copy of each judgment roll, and place his certificate to such copy. And what is true of the foregoing illustration is also true of his charges on what he styles "Sealed

Note Judgments, No. 128." So of his "Transcript of Judgments." So, also, of his "Judgments, Foreclosure and Partition No. 194." All these charges in the aggregate amount to $2,711.92. We repeat, that under the act the petitioner is only allowed to charge for a copy of each judgment roll and his certificate thereto. It seems that the Circuit Judge did not pass upon these facts. There being clear error in these matters, it will be necessary for us to remand the case to the Circuit Court, with directions to have the amount due the petitioner ascertained according to the directions herein embodied.

The respondents have raised a preliminary question as to the jurisdiction of the Circuit Judge to issue a writ of mandamus. It is quite true that this board is clothed with great powers, yet in regard to the copying directed to be done for the commissioners by the petitioner, the commissioners are directed to pay the petitioner for his work in accordance with the terms of the act, and we do not see why the writ of mandamus may not issue.

It is the judgment of this Court, that the order of injunction issued by Judge Watts, here appealed from, be so modified as only to require the commissioners for Dorchester County to hold until the further order of Court the sum of $7,394.68. And it is the further judgment of this Court, that the cause be remanded to the Circuit Court for the purpose of ascertaining how much of the $2,711.92 now charged on petitioner's account in connection with judgments should be stricken from said account, in accordance with the principles herein announced.

Mr. Justice Jones *dissenting*. I am compelled to dissent in this case. In the first place, I do not think it competent for the Circuit Judge in mandamus proceedings to determine the amount due upon the disputed account in this case, and in effect render judgment thereon and issue an order to compel its payment. All that he had power to do was to compel the special commissioners to move in the

matter of auditing the petitioner's claim.   Assuming that it was the duty of the special commissioners to audit said claim, the exercise of that duty involved discretion, which the Circuit Judge could not control by mandamus.   Conceding that the auditing of a claim of an officer for salary or fees fixed by law is merely ministerial, as held in *County v. Miller*, 16 S. C., 251, it can not be said that the passing upon the petitioner's claim in this case is merely ministerial, for in passing upon this claim the commissioners would necessarily be compelled to determine whether the "conveyances, mortgages and liens" copied affected the territory embraced in the county of Dorchester, and whether the copying was done as required by the act, matters clearly involving the exercise of judgment and discretion.

In the next place, while concurring in the view of the majority of this Court as to the impropriety of allowing charges for certain items of the claim, inasmuch as the petitioner can only charge for one-half the usual fees "*for making and certifying such copies*" in a substantial book, I am bound to think an improper construction has been placed upon the act in question as to other charges.   The 16th section of the act provides for copies of "all conveyances, mortgages and liens of every kind and description *now on record in* their respective offices affecting or pertaining to all that territory embraced in the county of Dorchester. * * * That such copies of (conveyances, mortgages and liens now on record) *shall be made in substantial books* to be procured for that purpose, &c."   It appears very clear to me that this act does not require the commissioners to pay for any copy of any conveyance, mortgage or lien not recorded in the county of Colleton or Berkeley, and not copied by the petitioner in substantial books.   This would eliminate from the account charges for mere sheet copies of the judgment roll or any part thereof, most certainly, for mere sheet copies or parts of the judgment roll not recorded or required to be recorded.